IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-18-1001 |
| | * | |
| CINDY TORRES, et al., | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

J & J Sports Productions, Inc. ("J & J") filed this action on April 6, 2018 against Cindy Torres and Ruth Melgar, trading as Chie's Enterprising, LLC, Irene's Pupusas, and Irene's Pupusas Restaurant, alleging violations of 47 U.S.C. § 605 and 47 U.S.C. § 553. ECF No. 1. The summons was returned executed on April 18, 2018. ECF No. 4. Defendants filed no responsive pleading, and the clerk entered default on June 21, 2018. ECF No. 8. Plaintiffs have moved for a default judgment. ECF No. 9. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiffs' Motion for Default Judgment is granted in part and denied in part.

I.     **BACKGROUND**[1]

J & J paid for and was granted "the exclusive nationwide commercial distribution rights" to a series of boxing matches airing on Saturday, May 2, 2015. ECF No. 1 ¶ 15. J & J subsequently entered into sublicensing agreements with various commercial establishments in the hospitality industry to broadcast the match. *Id*. ¶ 16. In an affidavit attached to J & J's

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1.

complaint, a private investigator declared that, on the evening of May 2, he entered Irene's Pupusas, a restaurant in Silver Spring, Maryland, and observed one of these boxing matches being shown on one of the restaurant's televisions. ECF No. 1-1 at 7.[2] Approximately 40 people were inside the restaurant, which had a capacity of approximately 200 people. *Id*. at 8. According to the rate card for the program, J & J would have charged $6,000 to broadcast the match to a venue with a capacity of 101-200 people. *Id*. at 10.

Plaintiff alleges that Defendants' broadcast of the boxing match violated its rights as the "exclusive commercial domestic distributor" of the match. ECF No. 1 ¶ 3. Plaintiff further alleges that Defendants had the "right and ability," and the "obligation" to supervise the activities of Irene's Pupusas; indeed, Plaintiff contends that Defendants "specifically directed" the employees of Irene's Pupusas to intercept and broadcast the program without authorization and "had an obvious and direct financial interest in the activities" of Irene's Pupusas. *Id*. ¶¶ 8-11, 19.

## II.  STANDARD OF REVIEW

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment: rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25.2011). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *id*. (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id*.

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the exhibit and page numbers generated by that system.

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). The pleadings in the complaint must constitute a legitimate cause of action, as analyzed under the *Iqbal/Twombley* pleading standard. *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). That is, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must "provide sufficient detail" to show "a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners*, 887 F.3d 637, 645 (4th Cir. 2018) (citing *Owens v. Balt. City State's Attorneys Ofice*, 767 F.3d 379, 396 (4th Cir. 2014)).

If the pleadings in the complaint constitute a legitimate cause of action, the Court must make an independent determination of damages. *See Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). In doing so, the Court need not "accept factual allegations regarding damages as true." *Id*. The Court may not, however, enter a default judgment that differs "in kind from, or exceed in amount, what is demanded in the pleadings." *Id*.

### III. DISCUSSION

#### A. Liability

Sections 553 and 605 of the Federal Cable Act prohibit the unauthorized interception or receipt of certain cable or radio communications (including digital satellite television transmissions), respectively. 47 U.S.C. §§ 553, 605. Plaintiff's allegations are sufficient to establish that it owned the sole and exclusive distribution rights for the boxing match, and that Defendants did not pay Plaintiff for the right to broadcast the match. ECF No. 9-5 ¶ 2. Therefore, there is no question that Chie's Enterprises, LLC, can be held liable for violations of §§ 553 or 605. *See J & J Sports Prods., Inc. v. Mayrealll, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012)

(recovery may only lie under either § 553 or § 605, but the Court need not resolve under which of the two statutes liability lies at this stage).

Individuals may be held liable for corporate violations of the Federal Cable Act where "'the individual had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct.'" *Id*. at 589 (quoting *J & J Sports Prods, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)). Plaintiff's complaint contains conclusory allegations that Defendants "had a right and ability to supervise the violations," as well as "an obvious and direct financial interest" in the misconduct. ECF No. 1 ¶¶ 8, 11. The latter of these, in particular, constitutes a "formulaic recitation[] of the elements" of the claim, amounting to conclusory allegations "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (holding that allegations a defendant "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement" were insufficient to state a claim). As in *Iqbal*, the Court need not "reject these bald allegations on the ground that they are unrealistic or nonsensical." *Id*. Rather, Plaintiff's allegations do not plead any facts that illuminate the "obvious and direct" nature of Defendants' financial interest in the broadcast of the program; for example, no cover charge was paid that would constitute direct profit for the owners due to the broadcast of the program, ECF No. 9-6 at 1, and the Complaint is bereft of any allegations as to the actual financial relationship between the individual defendants, Chie's Enterprises, LLC, and Irene's Pupusas or Irene's Pupusas Restaurant. Because Plaintiff has not pled facts to support the assertion that Plaintiffs had an obvious and direct financial interest in the broadcast of the program where only 40 people were present, with no cover charge, in a restaurant with a capacity of 200 on a Saturday evening, *id*. at 2, the Court will not hold the individual defendants liable for the corporation's violation of §§ 605 and 553. *See also Mayrealll*, 849 F. Supp. 2d at 591-92 (holding that assertions that individual defendants intercepted the broadcast "willfully and for

4

purposes of direct or indirect commercial advantage or private financial gain" were insufficient to satisfy *Iqbal*'s pleading requirements).

B. Damages

Plaintiff requests an award of $26,190 in damages. Plaintiff's request amounts to $6,000 in statutory damages under § 605(e)(3)(C)(i)(II), $18,000 in enhanced damages under § 605(e)(3)(C)(ii), and $2,190 in attorney's fees pursuant to § 605(e)(3)(B)(iii). Section 605 provides for statutory damages for each violation ranging from $1,000 to $10,000, and the court may increase the award of damages by up to $100,000. § 605(e)(3)(C)(i-ii). Courts have taken various approaches to calculating the proper award of statutory damages. *See J & J Sports Prods. v. Greene*, No. 10-0105, 2010 WL 2696672, at *5 (D. Md. 2010) (awarding statutory damages based on the amount the establishment "would have been required to pay in order to exhibit the boxing matches lawfully"); *J & J Sports Prods. v. Quattrocche*, No. WMN-09-CV-3420, 2010 WL 2302353, at *3 (D. Md. 2010) (awarding the minimum $1000 where profits to Defendants were far below $1000); *Kingvision Pay-Per-View, Ltd. V. Las Reynas Restaurant, Inc.*, No. 4:07-CV-67-D, 2007 WL 2700008, at *2 (E.D.N.C. 2007) (collecting cases in which courts have multiplied "the licensing fee or some other dollar figure by the number of patrons observed in the venue at the time the broadcast was displayed").

The Court finds the approach taken by the *Greene* court to be the most persuasive. The best approximation of the damages suffered by J & J is the amount Defendants would have had to pay for the match they illegally broadcast. Therefore, the Court concludes that statutory damages will be awarded in the amount of $6,000, as that is the amount J & J would have charged according to the rate card for the program. ECF No. 1-1 at 10.

Where the court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may

5

increase the award of damages . . . by an amount of not more than $100,000." § 605(e)(3)(C)(ii).

In *Quattrocche*, the court observed:

> In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks.

2010 WL 2302353, at *2.

Here, the factors weigh against an award of enhanced damages. The allegations of willfulness are made in a conclusory manner, and there are no allegations of repeated violations, substantial monetary gains, advertising the broadcast, or charging an admission fee or premiums for food or drink. Furthermore, the deterrence interests advanced by Plaintiff can be achieved by the award of attorney's fees. Therefore, the Court will not award enhanced damages in this case.

Finally, Plaintiff asks for an award of costs and attorney's fees. Plaintiff has submitted an affidavit swearing that its attorneys have spent 3.9 hours to bring this action, at a rate of $350.00 per hour for an attorney with 40 years of experience, and $200 per hour for an attorney with 3 years of experience, amounting to a total of $1,065.00. These rates are within the local guidelines and are reasonable. *See* Loc. R. App. B (D. Md. July 1, 2016). Plaintiff's affidavit also swears to the incursion of reasonable costs, including an investigator fee of $625.00, a filing fee in the amount of $400.00, a courier service fee of $10.00, and a process server fee of $90.00. Therefore, the Court will award $2,190 in attorneys' fees and costs.

## IV. CONCLUSION

Plaintiff's Motion for Default Judgment, ECF No. 8, is granted in the amount of $8,190, and judgment is entered as to Chie's Enterprises, LLC t/a Irene's Pupusas t/a Irene's Pupusas Restaurant. Plaintiff's Motion for Default Judgment as to the individual defendants Cindy Torres

and Ruth Melgar is denied. A separate order shall issue.

Dated: March   26, 2019                                      /s/_____
                                                             GEORGE J. HAZEL
                                                             United States District Judge